770 So.2d 232 (2000)
Woodrow HUNTER, Petitioner,
v.
STATE of Florida, Respondent.
No. 4D00-2423.
District Court of Appeal of Florida, Fourth District.
October 25, 2000.
Richard L. Jorandby, Public Defender, and Tara Finnigan, Assistant Public Defender, West Palm Beach, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for respondent.
WARNER, C.J.
The public defender moved to withdraw from representation of petitioner because a former client of the public defender's office was implicated in the same crime. After a hearing in which the court probed the public defender's potential conflict, the *233 trial court denied the motion. We deny the petition for writ of certiorari, concluding that the trial court did not depart from the essential requirements of law.
Petitioner and another co-defendant were charged with robbery with a firearm and burglary of a structure which arose from an incident at a gas station. The perpetrators fled from the scene in a vehicle which later crashed. Petitioner was tracked from the car to his hiding location on the night of the robbery by K-9 assistance. Latent fingerprints taken from a vehicle identified as the getaway vehicle matched those of Sam Duvall, an apparent acquaintance of petitioner and a former client of the public defender's office in connection with one juvenile matter in 1998 and a subsequent criminal matter in 1999. Duvall was not represented by the public defender's office at the time, and the assistant public defender appointed to represent petitioner did not represent Duvall.
Petitioner's public defender moved to withdraw due to a conflict of interest, claiming that her strategy in petitioner's case would be to shift the blame to Duvall. Based upon discovery done by the co-defendant, counsel suggested that the evidence may show that the only opportunity for Duvall to have placed his prints on the vehicle was on the evening of the robbery, as the car was stolen only hours before the robbery. Counsel also alleged that she had deposed Duvall in the case, and he testified that petitioner was with Duvall at a friend's home on the night of the robbery. However, counsel concluded that the "alibi" evidence contradicted all of the other evidence in the case and would ultimately be in culpatory rather than ex culpatory. Therefore, counsel intended to pursue a strategy to shift the blame to Duvall as the passenger and gunman in the robbery.
The trial court conducted a hearing and noted that Duvall would not even be a witness in the case based upon the blame shifting strategy. Disputing this statement, the public defender maintained that she would call Duvall as a witness. The colloquy continued:
COURT: Mr. Duvall is not even going to be a witness in this case.
P.D.: Well, now, if I may, I'm sorry. That's, that may not be so. Because
COURT: Who would be calling him?
P.D.: I will be calling him and also co-defendant is calling him.
COURT: And what purpose would you have for calling him?
P.D.: To shift the blame to him.
COURT: And how are you gonna do that? Put him on the stand and say did you do it?
P.D.: Well, I do have, we do have some evidence and that could very well be. We can impeach him as far as his priors are concerned.
COURT: No, you can't, he's not gonna say anything.
P.D.: Because he's gonna take the Fifth on the advice of counsel?
COURT: I'm asking you what would you even call him for, you have no good faith basis to even put him on the stand.
P.D.: First of all, he is an alibi witness for me.
COURT: Oh, really?
P.D.: Well, now, Judge.
COURT: If he's an alibi witness for you, you have no conflict.
P.D.: No, no. I do have a conflict, okay, Because this occurred afterward. Okay, when we discussed
COURT: Excuse me. What occurred afterwards.
P.D.: I had, there was a deposition done on Mr. Sam Duvall. And Mr. Sam Duvall provided Mr. Woodrow Hunter with an alibi.
COURT: Right, which means he's on your team.
P.D.: Correct. Thereafter, pursuant to co-counsel's insistence there was more work done on the fingerprints that were *234 found on the scene, particularly the car. Those prints matched Mr. Sam Duvall. Okay? Thus, I no longer have an alibi, do I?
COURT: Right, so you have no reason to call him.
P.D.: But I do have a reason to shift the blame to him.
COURT: Go right ahead.
From that discussion, the trial court told counsel that she could not put Duvall on the stand for the sole purpose of impeaching him, so he would not be a witness. Petitioner's counsel again noted her intent to "develop the fact that his prints were found at the scene or connected with the scene". The trial court found this was not a conflict and repeated at least three times to the public defender "[y]ou have no continuing duty of loyalty." The trial court found support for such comment in Martin v. State, 761 So.2d 475 (Fla. 4th DCA 2000).
The trial court then entered a written order denying the motion finding no actual conflict. The court noted that the PD's files concerning Duvall were closed, that Duvall will not be a witness in the case, and that Stoudimire v. State, 760 So.2d 985 (Fla. 5th DCA 2000), was not on point as that case involved a current PD client. This petition followed.
As we noted in Valle v. State, 763 So.2d 1175 (Fla. 4th DCA 2000), the trial court now has discretion to inquire into the allegations of conflict when a public defender seeks to withdraw from representation. This was the result of an amendment to section 27.53(3), Florida Statutes (1999), and a reaction to the supreme court's decision in Guzman v. State, 644 So.2d 996 (Fla.1994), cert. denied by 526 U.S. 1102, 119 S.Ct. 1583, 143 L.Ed.2d 677 (1999). The statute provides:
The court shall review and may inquire or conduct a hearing into the adequacy of the public defender's representations regarding a conflict of interest without requiring the disclosure of any confidential communications. The court shall permit withdrawal unless the court determines that the asserted conflict is not prejudicial to the indigent client.
§ 27.53(3), Fla. Stat. (1999). We conclude that the trial court followed the essential requirements of law in considering the issues based upon the record before it.
Although the public defender had a strategy of shifting the blame to Duvall, the trial court determined that Duvall could not be called as a witness where the sole purpose for calling him would be to have him assert his Fifth Amendment rights. See Faver v. State, 393 So.2d 49 (Fla. 4th DCA 1981). Therefore, because the public defender could not call Duvall as a witness in her blame shifting strategy, the trial court determined that no actual conflict would occur.
In this petition, we are cited to Stoudimire, a case in which the fifth district granted a petition and required withdrawal in a case where the public defender determined that he would pursue a blame shifting strategy against a current client of the office. However, in that case, Stoudimire was charged with fleeing or eluding an officer, which arose from a car chase. The public defender's other current client, Phelps, was in the car with Stoudimire at the time of the chase, although he was not charged with any crime arising from the incident. Even though both the state and the public defender indicated that they would probably not be calling Phelps as a witness, the fifth district determined that "Stoudimire's right to conflict-free counsel applies to the pre-trial stage in developing defenses." Id. at 986.
In contrast to Stoudimire, where Phelps was actually in the automobile during the chase and was apprehended by police, no other evidence suggests any connection between Duvall and the instant crime other than his fingerprints on the getaway vehicle. Further, Phelps was a current client of the public defender's office, while Duvall was only a former client. In addition, Duvall was actually deposed by the public defender, revealing the potential alibi defense *235 that has apparently been rejected. We thus deem Stoudimire distinguishable.
At the hearing on the motion to withdraw, the public defender repeatedly referred to her continuing duty of loyalty to a former client of the office, which the court rejected as a ground for withdrawal. The public defender states that the trial court is simply wrong about this and cites to Reaves v. State, 574 So.2d 105 (Fla. 1991). Reaves does not establish a "continuing duty of loyalty" and actually supports the trial court's ruling in the present case.
In Reaves, the supreme court reversed a murder conviction and death penalty sentence because Bruce Colton, the state attorney prosecuting Reaves, had actually represented him as an assistant public defender some years back. Many of the issues raised regarding mitigating circumstances in the death penalty phase of the trial were also raised in the prior criminal proceedings during which Reaves was represented by Colton. The court held that Colton should have been disqualified from representing the State. See id. at 107. In doing so, it noted that as a matter of public confidence in the judicial system, as well as a client's confidence in his or her representation, disqualification of a prosecutor who previously defended a person is required. They offered a caveat to that principle, noting:
Under this decision, a conviction must be reversed if the trial court denies a pretrial defense motion to disqualify a prosecutor who previously has defended the defendant in any criminal matter that involved or likely involved confidential communications with the same client. Disqualification will not be required if the prosecutor's prior representation involved a perfunctory matter, such as a motion hearing, in which the prosecutor did not actually receive privileged information.

Id. at 107 (second emphasis added). Moreover, the court acknowledged that the entire state attorney's office did not have to be disqualified so long as the prosecutor who formerly represented the client was screened from any participation or discussion of the present case. Thus, it is clear that there is no blanket continuing duty of loyalty by the mere fact of some representation which translates to automatic disqualification any time the prior client is in any way involved in a subsequent case. Each case must be reviewed on its specific facts and circumstances. In the instant case, the representation of Duvall consisted of two plea conferences, and there is no privileged information implicated in this case. In fact, Duvall will not be called to testify at all.
The public defender also cited to Bouie v. State, 559 So.2d 1113, 1115 (Fla.1990), which states in dicta that the public defender's office is the functional equivalent of a law firm. However, in Bouie the court's holding was that to show a constitutional violation of the right to counsel, an actual conflict of interest adversely affected the lawyer's performance. See id. This is consistent with section 27.53(3) which permits the trial court to assess not only whether a conflict exists, but also whether the asserted conflict is prejudicial to the indigent client.
The trial court thoroughly assessed whether a conflict existed and its prejudicial effect. We find no abuse of discretion or departure from the essential requirements of law. Because the trial court's determination is dependent upon the facts as presented to it at the hearing and in the motion, our decision is without prejudice for the petitioner to raise this issue again should the facts change or on direct appeal should the petitioner be able to demonstrate actual prejudice depriving him of constitutionally sufficient counsel. See Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
Petition denied.
DELL and TAYLOR, JJ., concur.