PER CURIAM.
Petitioners are two criminal defendants facing capital murder charges in Duval County, Florida. Via two separate petitions for writ of certiorari, the petitioners sought review of the denial of two motions filed by the Fourth Circuit Public Defender’s office, seeking to withdraw from each case on the basis of a conflict of interest. Throughout the course of this litigation, it became clear that the conflicts were related and the issues identical, and we consolidated these petitions for all purposes. We now write, via this consolidated opinion, to quash the trial court’s orders denying the motions to withdraw, and to explain our reasons for so doing.

Deviney

Randall Deviney was charged by information on November 20, 2008, with the first-degree murder of Delores Futrell, an elderly neighbor. A jury convicted Deviney as charged, and he was sentenced to death on June 11, 2010. He appealed his conviction and sentence, and the Florida Supreme Court reversed and remanded for a new trial. Deviney v. State, 112 So.3d 57 (Fla.2013).
On November 24, 2014, six weeks from the date of Deviney’s retrial, counsel moved to withdraw from the case. She argued that her representation of Deviney would be materially limited by her responsibilities of loyalty and confidentiality to another unnamed client, pursuant to Rule 4-1.7 of the Rules Regulating The Florida Bar. A hearing was held on the motion to withdraw, at which Deviney’s attorney, Senovia Portis, stated that she was unable to disclose the nature of the conflict in any significant detail, beyond affirming that the conflict related to the office’s representation of both Deviney and Donald James Smith, another felony defendant who was also awaiting trial. Ms. Portis stated that she had contacted the Florida Bar’s ethics hotline three times, and each time, when she described the nature of the conflict, she was advised to withdraw from representation. She represented that she was unable to reveal the full nature of the conflict to the trial judge, who is serving as the trial judge in both Smith and Deviney’s cases, without breaching her duty to one or both clients.
Assistant State Attorney (ASA) Bernie de la Rionda argued at the hearing on the motion to withdraw that Deviney had manufactured the conflict in order to delay his retrial, and that Deviney was, through this contrived conflict of interest, committing a fraud upon the court. Mr. de la Rionda asserted that the State would waive any interest it had in Deviney’s potential testimony against another defendant, concluding, “If he’s got information that he wants to provide about somebody else, we are not interested.” Mr. de la Rionda again asserted this position later in the hearing, stating: “I am not interested. I don’t want to create an issue of conflict.... No matter what Mr. Deviney would be willing to present to us, we are not interested.... So if that’s the case, that Mr. Deviney has information against somebody else, we are not interested. We don’t need it. So I *1122 don’t know how much clearer we can be about that.”
The trial judge entered an order denying Ms. Portis’ motion to withdraw on December 10, 2014. She found that Ms. Portis had “not presented evidence sufficiently establishing the existence of an actual conflict.” As grounds for this conclusion, the court noted that “[t]he State is not using Defendant’s testimony against any other public defender client and the State is not going to use any other public defender client as a State witness during Defendant’s trial.” Thus, the trial judge concluded, withdrawal of the public defender’s office was not required. She also found that Deviney’s knowledge of the information itself did not warrant withdrawal, because the information was known to the second public defender client who had disclosed the information to Deviney. Accordingly, there was no conflict arising from the office’s inability to share the information with the second client.
After apparently failing to receive the reaction he sought from the State Attorney’s office, Deviney sent a letter to several news outlets, stating that he has information about a “cold case” — a second kidnapping, rape and murder Deviney asserts were committed by Smith. See, e.g., Larry Hannan, Murderer Implicates Smith in Cold Case, Florida Times Union, January 11, 2015, at A-l. Deviney seeks to negotiate a plea deal in exchange for his information on Smith. See id.

Smith

Donald James Smith stands charged with the kidnapping, rape, and murder of Cherish Perrywinkle, an eight-year-old girl. The motion to disqualify in Smith’s case was substantially similar to the motion filed in Deviney’s case and was filed by Fred Gazaleh, an attorney working in Ms. Portis’ office. At the hearing on the motion to withdraw in Smith’s case, ASA Mark Caliel asserted that the State had no interest in using any information that any other criminal defendant might have at Smith’s trial.
As in Deviney’s case, the trial judge denied the motion to withdraw in Smith’s case, finding that the public defender’s office had “not presented evidence sufficiently establishing the existence of an actual conflict.” Again, the order noted, “the State is not using any other public defender client as a State witness during trial and the State has no intention on seeking to learn the information at issue from the other public defender client.”

Analysis

Certiorari is an appropriate vehicle for review of an order denying a motion to withdraw in a criminal matter. See, e.g., Hunter v. State, 770 So.2d 232 (Fla. 2d DCA 2002); Kolker v. State, 649 So.2d 250 (Fla. 3d DCA 1994). Pursuant to the Florida Statutes:
If, at any time during the representation of two or more defendants, a public defender determines that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his or her staff without conflict of interest, or that none can be counseled by the public defender or his or her staff because of a conflict of interest, then the public defender shall file a motion to withdraw and move the court to appoint other counsel. The court shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest without requiring the disclosure of any confidential communications. The court shall deny the motion to withdraw if the court finds the grounds for withdrawal are insufficient or the asserted conflict is not prejudicial to the indigent client.
Fla. Stat. § 27.5303(1)(a) (2014) (emphasis added). In the instant petitions, the public *1123 defender argues that the circuit court’s finding that the public defender’s office “has not presented evidence sufficiently establishing the existence of an actual conflict” increases the burden on that office beyond what section 27.5303(l)(a) requires, by undermining the portion of that section precluding the trial court from “requiring the disclosure of any confidential communications.” We agree.
In opposition to these petitions, the State argues that a showing of actual prejudice is required for withdrawal to be permitted, relying on Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), for the proposition that “the possibility of a conflict is insufficient to impugn a criminal conviction.” While conceding that a defendant need not show actual prejudice in cases where an attorney “actively represented conflicting interests,” Mickens v. Taylor, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the State argues that an active conflict of interest is necessarily “a conflict that affected, counsel’s ‘performance — as opposed to a mere theoretical division of loyalties.” Id. at 171, 122 S.Ct. 1237 (emphasis in original).
We disagree with the State’s premise that actual prejudice to the defendant is required before withdrawal of counsel will be permitted in the pretrial context. All of the cases relied upon by the State for this point are in the post-trial, post-judgment posture. Here, by contrast, both cases are in the pretrial stage. As to evaluating conflicts of interest before trial,
Even though this matter is in the pretrial stages and an actual conflict may yet not be apparent, the case is rife with the potential for such conflict. “In the murkier pre-trial context when relationships between parties are seen through a glass, darkly,” the court is accorded broad discretion in determining whether the potential for conflict exists.
Kolker, 649 So.2d at 251-52 (emphasis in original) (quoting Wheat v. U.S., 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). “Viewed prospectively, any substantial risk of harm is deemed prejudicial.” Scott v. State, 991 So.2d 971, 972 (Fla. 1st DCA 2008). “Section 27.5303(1)(a) requires denial of a legally sufficient motion only if the trial court affirmatively finds that an indigent client or his or her representation has not been and is unlikely to be prejudiced by the public defender’s representation of the other client(s) ... i.e., that ‘the asserted conflict is not prejudicial to the indigent client.’ ” Id. at 975 (quoting Fla. Stat. § 27.5303(1)(a) (2006)) (footnote omitted) (emphasis added).
Under Rule 4-1.7(a) of the Rules Regulating the Florida Bar,
[A] lawyer must not represent a client if: s
(1) the representation of 1 client will be directly adverse to another client; or
(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer’s responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
R. Regulating Florida Bar 4-1.7(a) (emphasis added).[1] Where one public defender has a conflict of interest, that conflict is imputed to the entire public defender’s office. Ward v. State, 753 So.2d 705 (Fla. 1st DCA 2000). “As a general rule, a public defender’s office is the functional equivalent of a law firm. Different attorneys in the same public defender’s office cannot represent defendants with conflict *1124 ing interests.” Bouie v. State, 559 So.2d 1113, 1115 (Fla.1990) (citing Turner v. State, 340 So.2d 132 (Fla. 2d DCA 1976)).
As this court noted in Scott, the trial court “is no longer bound to accept the public defender’s factual representations at face value” under section 27.5303, and may conduct an evidentiary hearing into the basis for the public defender’s motion to withdraw. Scott, 991 So.2d at 973. However, the court in Scott noted that section 27.5303 recognizes that there may be situations in which the trial court is precluded by a public defender’s ethical duty to his or her client from learning all the facts relating to a conflict of interest:
Where circumstances preclude the trial court’s learning whether a conflict of interest has had or will have an impermissible effect, moreover, the motion for leave to withdraw should be granted. The statute is designed to protect the constitutional right to counsel. It recognizes that the trial court may not be able to ascertain whether a conflict of interest has proven, or may yet prove, harmful to the client or the client’s representation. After all, the statute acknowledges the existence of confidential communications, and does not purport to abolish the attorney-client privilege or the work product privilege, both of which limit the trial court’s ability to learn all the facts.
Scott v. State, 991 So.2d at 974 (footnote omitted) (emphasis added). This is such a situation, as all parties readily concede.
We conclude that in this instance, the State’s promise not to use the alleged information was not sufficiently broad to destroy the conflict of interest so thoroughly that the need for the withdrawal of counsel would be obviated. Specifically, at the hearing on the motion to withdraw in petitioner Smith’s case, ASA Mark Caliel stated:
What I can place on the record at this point in time is that the State of Florida has absolutely no interest in utilizing an inmate witness regardless of their identity or regardless of the charges against Mr. Smith at his trial on January 20th.
We have reviewed all the evidence and the forensic evidence and the testimony evidence that we have and there is no strategic value or inherent value whatsoever placing a person charged with an offense on the witness stand to testify against Mr. Smith.
And based upon that, we are firmly stating on the record that we have no interest speaking with this client, whomever they may be, and we intend on proceeding to trial January 20th as planned.
By doing so, I’m not aware, obviously, of what the Court’s prior conversation with counsel is, but when it comes to having conflict in our proceedings, if there is no Public Defender witness who takes the witness stand there would be no conflict, because there would be no limitations on cross-examining that witness.
So we have no interest whatsoever in speaking to that individual and we’re basically declining any offers to do so. I’m not sure that any actual conflict actually arises.
(Emphasis added). It is clear from these statements that the extent of the State’s promise was not to use any potential information against Smith at the trial of the current charges against him. The State’s promise did not cover the use of information against Mr. Smith relating to a new and uncharged crime. The State would be free, for example, to seek out and utilize the potential information against Mr. Smith to bring new criminal charges against him unrelated to those that are currently pending. Accordingly, the promises made by the State at the hearing on the motion to withdraw were insuffi- *1125 dent to do away with the potential conflict of interest herein.[2] “To deny a motion for separate representation, where a risk of conflicting interests exists, is reversible error.” Foster v. State, 387 So.2d 344, 345 (Fla.1980) (citing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)).
“Although the rule was once otherwise, section 27.5303, Florida Statutes ... now permits a trial court to inquire into the factual basis of a legally sufficient motion for leave to withdraw on conflict of interest grounds that arise from the public defender’s representation of multiple defendants.” Scott v. State, 991 So.2d 971, 973 (Fla. 1st DCA 2008) (footnote omitted). The amendment of this provision to allow for a factual inquiry into a motion to withdraw, however, does not give a trial court free rein to inquire into matters which are privileged by law. See Fla. Stat. § 27.5303(1)(a) (2014) (“The court shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest without requiring the disclosure of any confidential communications ”) (emphasis added).
Pursuant to that section, in the very narrow circumstance presented here — where a public defender represents that a conflict of interest exists, but is precluded from revealing the nature of the conflict to the trial court based upon his or her ethical duty to the client—Guzman v. State, 644 So.2d 996, 999 (Fla.1994) (mandating withdrawal upon the basis of a public defender’s representation of a conflict due to adverse interests between two clients), remains intact. This is notwithstanding the fact that Guzman was in all other respects superseded by Chapter 99-282, § 1, Laws of Fla., as recognized in Snelgrove v. State, 921 So.2d 560, 566 n. 11 (Fla.2005). Guzman still stands, but only in the extremely narrow circumstance presented in these cases. Once a public defender has certified a conflict, and where it becomes clear that the trial court cannot learn the basis for the conflict “without requiring the disclosure of ... confidential communications,” the trial court must grant the motion under section 27.5303(1)(a).
In these cases, the trial judge’s finding that the public defender’s office “has not presented evidence sufficiently establishing the existence of an actual conflict” runs contrary to section 27.5303(1)(a), because for the public defender’s office to present such evidence, it would be forced to reveal confidential and privileged client information. The portion of the order requiring the public defender to “present[ ] evidence sufficiently establishing the existence of an actual conflict,” where the public defender had signified that she could not do so without breaching her duties to these clients, left counsel for these defendants two options: either (1) disclose the information to the trial court, thus revealing privileged communications and violating the office’s duty of loyalty to the clients, or (2) proceed to trial in both cases with a conflict of interest. In encumbering the public defender with this dilemma, “the trial court impermissibly obligated the public defender to ‘serve a dual and adverse stewardship.’ ” Scott, 991 So.2d at 976 (citing Bellows v. State, 508 So.2d 1330, 1331-32 (Fla. 2d DCA 1987)).
*1126 “[B]y requiring an ethically conflicted attorney from the [Public Defender’s] Office to represent the petitioner, the trial court would be denying effective assistance of counsel.” Ward v. State, 753 So.2d 705, 708 (Fla. 1st DCA 2000). Such a ruling “constitutes a departure from the essential requirements of law that would result in an irreparable, material harm to the petitioner that cannot be remedied on final appeal.” Id. (citing Combs v. State, 436 So.2d 93 (Fla.1983)).
We close by noting that the well-regarded and experienced trial judge did everything that she could to achieve a just and fair result given the statutory conundrum she faced and the gravity of the trials at issue. Her efforts were commendable. We recognize the difficulty that section 27.5303(l)(a)’s specific limitation on the disclosure of confidential information creates for trial judges and attorneys, and the potential for the unscrupulous criminal defendant to attempt to exploit this statutory exception by manufacturing a conflict of interest and thus creating a fraud upon the court. The potential for mischief is tempered by the fact that any motion to withdraw based upon such a conflict will be based upon a public defender’s “representations as an officer of the court.” Holloway, 435 U.S. at 485, 98 S.Ct. 1173. Perhaps other mechanisms exist for handling situations involving confidential information, ones that provide for more direct means of verifying that an actual conflict exists; but that is a legislative question for another day.
In conclusion, the language of section 27.5303(l)(a) requires that the trial court’s inquiry into the nature of a conflict of interest based on confidential information stops where attorney-client privilege begins. Accordingly, we are constrained to hold that, under the narrow facts presented in these cases, withdrawal was and continues to be required. The orders of the trial court denying the public defender’s motions to withdraw are hereby QUASHED, and this matter is REMANDED to the trial court for further proceedings consistent with this opinion.
Finally, in view of the issue of great public importance presented in these cases, we hereby certify the following question to the Supreme Court of Florida:
IN CASES WHERE A PUBLIC DEFENDER MOVES TO WITHDRAW FROM THE REPRESENTATION OF A CRIMINAL DEFENDANT ON THE BASIS OF A CLIENT CONFLICT, BUT CERTIFIES TO THE TRIAL COURT, AS AN OFFICER OF THE COURT, THAT HE OR SHE IS UNABLE TO REVEAL THE CIRCUMSTANCES SURROUNDING THE CONFLICT WITHOUT REVEALING PRIVILEGED COMMUNICATIONS, IS A TRIAL JUDGE REQUIRED TO GRANT THE MOTION TO WITHDRAW?
ORDERS QUASHED and CASES REMANDED.
ROBERTS, RAY, and MAKAR, JJ., concur.

. A conflict of interest may be waived via informed consent, which has not been given in this case. See R. Regulating Fla. Bar 4-1.7(b).

. Nor have Deviney’s statements to the media destroyed the conflict of interest in these cases. While Deviney’s letters to various media outlets may have waived his attorney-client privilege under section 90.507, Florida Statutes, the conflict of interest still exists because Deviney has not disclosed the information in any real substance to law enforcement or to the ASA. Thus, Deviney still holds information that could be adverse to Smith and could lead to his subsequent prosecution.